IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHANH THONG,

    Plaintiff,

v.                                                                                                          CIV 99-1485 JP/KBM

WILLIAM A. HALTER,[1]
Commissioner of Social Security,

    Defendant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    Plaintiff Chanh Thong filed for disability benefits commencing the day he was fired from his job (March 9, 1995) based on the impairments of amputation requiring a prosthesis, of back pain, and of fatigue in his arms. *Administrative Record ("Record")* at 46. The Commissioner of Social Security issued a final decision denying Plaintiff benefits on November 4, 1999.

    This action was filed on December 21, 1999,[2] and the matter is before the Court on his Motion to Reverse or Remand the Administrative Decision. *Doc 12*. Having reviewed the entire record and considered the arguments and relevant law, I recommend that Plaintiff's motion be denied, the Commissioner's decision affirmed, and this matter dismissed.

---

    [1] On January 20, 2001, William A. Halter became the Acting Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Mr. Halter is substituted for Kenneth S. Apfel as the Defendant in this action.

    [2] After filing this suit, Plaintiff filed a new application for the period beginning the day after the final decision. *See Doc. 16.*

## **I.  Background**

Plaintiff completed a sixth grade education in Laos, Cambodia.  His leg was amputated below the knee in 1970 or 1971 during the Vietnam War.  He resided in a refugee camp until he came to the United States in 1980.  *Record* at 133.  His most recent past relevant work experience was as a machine operator at Trim Plastics in California from 1986 to 1995.  Prior to that, he worked for "lots of companies," primarily as a machine operator.  *Id.* at 136.  His job at Trim Plastics involved sitting and standing – sometimes he used his prosthesis and sometimes he used his crutches.  His employer fired him for "failure to carry out reasonable job assignments after being warned that refusal to do so could result in termination."  *Id.* at 101.  Plaintiff was deemed ineligible for rehire because of "continued poor performance."  *Id.*

Dr. Davis, a consultative physician, examined Plaintiff in December 1995.  As his primary complaint, Plaintiff reported "difficulty walking on his prosthesis on the right side and back pain, which tends to get worse with prolonged standing and walking."  *Id.* at 75.  Dr. Davis found "redness of the stump site, but no active infection, drainage, or other significant abnormalities were present [and] good movement of the right knee."  Although Plaintiff complained of low back pain when he bent to the right, Dr. Davis found good range of motion in his back and upper extremities.  *Id.* at 76.  The physician found that Plaintiff "may have difficulty with prolonged standing and walking at one time" and "would have difficulty doing heavy types of labor, but could probably do sitting-type work and other activities, since he has no obvious impairment of the upper extremities or other related problems."  *Id.* at 77.  He assessed Plaintiff as being able to lift twenty pounds occasionally, ten pounds frequently, stand or walk six hours a day; and sit six hours a day.  *Id.* at 27.

2

The results of Plaintiff's back x-ray noted "prior injury," and was normal save for "some small anterior osteophytes [bony outgrowth or protuberance] at L2-3 and L3-4." *Id.* at 74. The radiologist concluded that the x-rays showed only "mild degenerative changes at L3-4 and L4-5." *Id.* at 74; *see also* STEDMAN'S MEDICAL DICTIONARY (25th ed. 1990).

The Administrative Law Judge ("ALJ") determined that Plaintiff had two severe impairments: the amputation and mild degenerative disc disease.[3] He found that the amputation does not meet Listing ¶ 1.10 and agreed with the consultative examiner that Plaintiff retains the residual functional capacity for sedentary work. The ALJ discredited Plaintiff's assertion that, due to pain, (1) he can only sit for one hour, (2) needs to elevate his leg while seated, and (3) needs to lie down during the day. *Record* at 18. In doing so, the ALJ relied on factors such as the symptoms related to the consultative examiner and Thong's testimony about his daily activities. The ALJ found that the record as a whole did not support the degree of pain alleged by Plaintiff. *Id.* at 19.

Because the ALJ found Plaintiff could not return to his past job, at step five he elicited the testimony of a vocational expert. This expert was of the opinion that there are sufficient sedentary jobs (such as jewelry assembler, sewing machine operator, hospital products assembler) that Plaintiff could perform with his limitations, even if Plaintiff would have to elevate his leg during the day. *Id.* at 19, 170.

## II.  Analysis

If substantial evidence supports the ALJ's findings and the correct legal standards were

---

[3] He found the complaint of arm fatigue was not documented or pursued at the hearing, and Plaintiff does not pursue that impairment here, either.

applied, the Secretary's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  Plaintiff contends that the ALJ erred at step three because the amputation meets Listing ¶ 1.10 (C)(3).  Thong further argues that the ALJ's pain credibility analysis is contrary to law and not supported by substantial evidence.  *Doc. 13.*

### *The ALJ Did Not Err In His Listing ¶ 1.10 Finding*

Listing ¶ 1.10(C) permits a disability finding for "[i]nability to use a prosthesis effectively, without obligatory assistive devices, due to . . . 3.  Stump too short or stump complications persistent, or are expected to persist, for at least 12 months from onset."  The Tenth Circuit held in *Puckett v. Chater* that "Listing § 1.10 plainly requires stump complications, not problems with prosthetic fit."  *Puckett*, 100 F.3d 730, 733 (10th Cir. 1996). As the *Puckett* opinion further explains:

> Under that listing the inability to effectively use a prosthesis must be due to one of four conditions [including] 'stump too short or stump complications' (C.3).  These conditions all relate to problems of the claimant's body itself.  Problems with technicians' ability to repair or replace a prosthesis that a claimant used satisfactorily for twenty years does not fall within the scope of the listing.  In order to meet the § 1.10C.3 listing requirement, plaintiff must prove that he is unable to use a prosthesis effectively because of stump complications for at least twelve months.

In the present case, however, the ALJ found that:

> Stump complications are . . . not present.  While the claimant has sought evaluation for a new prosthesis (exhibits 24 and 23), this is due to the deterioration of the existing prosthesis and not due to a recent onset of stump complications.  Moreover, the record establishes (exhibit 27) that the claimant required prosthetic replacement in 1985, with subsequent retained ability to return to sustained work activities (exhibit 19).

*Record* at 18.

Thus, this case presents the same situation as in *Puckett*.[4] Although Thong complains of pain when wearing and using his prosthesis, and doctors have noted redness and possible "neuroma," there is no "draining or infection" in the stump. The treatment has been to modify Plaintiff's prosthesis, not to revise his stump. *See Doc. 13* at 4-5; *see also Bernal v. Bowen,* 851 F.2d 297, 300 (10th Cir. 1988) ("claimant's own descriptions of his impairments is not sufficient to establish his disability under the Listings," *citing* to 20 C.F.R. § 404.1528(a)). Accordingly, I find that the ALJ did not err in his Listing ¶ 1.10 finding.

### *The ALJ's Pain Credibility Finding Is Supported By Substantial Evidence*

The ALJ considered a number of factors in arriving at his conclusion that Plaintiff's "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility." *Record* at 19. His decision was based on:

- his agreement with the consultative doctor that Plaintiff retains the residual functional capacity for sedentary work;
- Plaintiff's treating physicians have not said he is unable to work;
- Plaintiff's ability to engage in a wide variety of activities;
- Plaintiff was not terminated for medical reasons; and
- Plaintiff has looked for work after the onset date.

---

[4] The evidence does not show that [Puckett] has stump complications meeting the listing. . . . At no time relevant to the instant disability determination was there any indication that plaintiff needed revisions to his stump. . . . Dr. Allen's indications that plaintiff always will have stump problems, even with the best management, is not enough to establish an impairment meeting the listing. According to Dr. Allen, any stump problems are primarily due to an improper fit of the prosthesis. . . . No medical records reflect a stump problem independent of the prosthesis fit or plaintiff's overuse of the prosthesis.

*Puckett*, 100 F.3d at 733.

Plaintiff raises three arguments that directly relate to the ALJ's findings and his contention that the ALJ erred in his pain credibility assessment.[5] Plaintiff first argues that his mild degenerative disc problems suggest that he suffers from arthritis and that arthritis is known to be a pain-producing ailment. However, there is nothing in the record showing Plaintiff has been diagnosed with arthritis.

Plaintiff also asserts that engaging in "limited" activities *alone* cannot establish the ability to engage in sedentary activity. I would not characterize Plaintiff's activities as "limited."[6] Moreover, the ALJ did not rely solely on Plaintiff's activities in making his assessment. The ALJ's finding that Plaintiff could engage in sedentary activity was based in large part on the consultive examiner's physical examination and testing of Plaintiff, which yielded objective

---

[5] Some of Plaintiff's arguments are in direct response to arguments asserted in the Commissioner's brief. The Commissioner claims Plaintiff could work for "twenty years despite his lower leg amputation" and Plaintiff argues the record only shows work at his last employer from 1986 to 1995. In fact, Plaintiff testified that he worked for "lots of companies" in the United States and he has been in this country since 1980, so I find this argument without merit. *Record* at 135-136. Plaintiff also takes issue with the Commissioner's assertions that receipt of unemployment insurance benefits and taking no prescription medication is inconsistent with complaints of disabling pain. None of these points were relied on by the ALJ and are not factors in my recommendation.

[6] Plaintiff testified or otherwise indicated that: he can walk four or five blocks, *Record* at 132; takes ibuprofen for pain, *id.* at 139; has a valid driver's license, needs no special equipment to drive, and has driven in the past, *id.* at 140-41; goes to church two to three times a month, *id.* at 142; visits with friends, *id.;* shoots pool sometimes, *id.* at 143; listens to music, *id.* at 144; watches TV and listens to the radio, *id.* at 145, 147; helps his roommate with cooking, washing, cleaning, and shopping, *id.* at 145-146; walks a "little bit" for exercise, *id.* at 146; lifts weights and does push-ups, *id.* at 62, 82; can attend to all his personal needs; *id.* at 147-149; and walk up and down the stairs to his home, *id*. at 149. He told the consultative doctor about his ability to do household chores, drive, and walk. *Id*. at 76. He did not tell the consultative examiner that he can only sit for one hour, needs to elevate his leg while seated, and needs to lie down during the day.

6

medical findings as to Plaintiff's physical limitations.[7]

Finally, in his reply Plaintiff argues that the employer's stated reason for firing him does not indicate the reason *why* he failed to do his job. Thong explained to the consultative examiner that he was fired because "he had difficulty doing the prolonged standing and walking and keeping up with his work duties." *Id.* at 76. And Plaintiff told the ALJ that he thought he was fired because of "the problem with the foremen, something that because I cannot work so fast because I get hurt my leg or my back some of the time and they let me go," or because of problems with this leg since he was "getting old." *Id.* at 134-135.

The circled portion of dismissal form, however, states that Plaintiff's termination for "failure to carry out reasonable job assignments after being warned that refusal to do so could result in termination" and elsewhere deemed Plaintiff ineligible for rehire because of "continued poor performance." The form did not circle the choice "inability to perform work," the only one of the choices that would appear lend itself to a medical reason. *Id* at 101. Thus, the dismissal form suggests an unwillingness, not inability, to perform. Even if record is not clear enough to support the finding that Plaintiff was fired for other than "medical reasons," that was not the sole

---

[7] The findings based on the physical examination were that Plaintiff: is alert and oriented; has intact hearing and speech, can squat down halfway; has good "cervical and thoracic motions" – 90E forward bend, 25E backward bend, 30E side bends in either direction; has good motion of shoulders, elbows, wrists, and finders; has intact motor ans sensory functions; has good movement of hips, knees, left ankle, and right knee. *Record* at 76.
   In joining the consultative examiner's assessment that Plaintiff retains the residual functional capacity for sedentary work, the ALJ found he could not credit Plaintiff's testimony that he can only sit for one hour, needs to elevate his leg while seated, and needs to lie down during the day, because those exertional limitations were neither related by Plaintiff to the consultative examiner nor contained in his medical records, and Plaintiff testified to engaging in the many activities that suggest the contrary. *Record* at 18. Plaintiff does not challenge this particular aspect of the ALJ's credibility finding. Even if he had, any such challenge would not change my conclusion above.

reason relied upon by the ALJ. On the whole, and particularly in light of Plaintiff's activities, the other factors are more that sufficient to support the ALJ's finding.

The record establishes that the ALJ evaluated Plaintiff's pain testimony and weighed that alongside the medical and other evidence in the record and articulated specific reasons for not fully crediting Plaintiff's testimony. Each of the multiple points on which the ALJ's reasoned credibility determination rests is supported by substantial evidence. *See e.g., Keppler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Plaintiff's motion *(Doc. 12)* be denied, the Commissioner's decision affirmed, and this action dismissed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE